UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA         :

   -v.-                                              :         S1 13 Cr. 682 (KBF)

JOSEPH L. JUNKOVIC,                  :

   Defendant.                                  :

------------------------------------------------------------x

## GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Andrew D. Goldstein
Assistant United States Attorney
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

   -v.-                                                      :          S1 13 Cr. 682 (KBF)

JOSEPH L. JUNKOVIC,                               :

       Defendant.                                    :

---------------------------------------------------------------x

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant is scheduled to be sentenced in the above-referenced case at 1:00 p.m. on September 15, 2014. The Government respectfully submits this memorandum in advance of sentencing to briefly respond to the defendant's sentencing submission filed on September 2, 2014 ("Def. Submission"). While the defendant concedes that his sentencing range under the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is 18-24 months' imprisonment, a range that was stipulated to as part of the defendant's plea agreement, the defendant asks the Court to impose a non-custodial sentence by (a) minimizing his offense conduct, (b) exaggerating the extent to which he has exhibited "sincere remorse" (Def. Submission at 10), and (c) overlooking the importance of deterrence in a case involving the theft of public funds.

As set forth below, the defendant's arguments should not be credited. Rather, because the defendant used his position of responsibility as a contractor for an important New York State governmental program to steal hundreds of thousands of dollars from the State, and because the crime took place over several years, from April 2008 through September 2011, during which the defendant spent huge amounts of illegally-obtained State monies at casinos and

1

traveling internationally, the principles of just punishment and deterrence warrant a sentence within the advisory Guidelines in this case, as recommended by the Probation Department.

### Background

For a period of well more than two years, Junkovic abused his position as the chairman and chief executive officer of a charity he created, Cancer Service Network, Inc. ("CSN"), to overbill the New York State Department of Health ("NYSDOH") by more than $350,000 by grossly overstating the number of hours that both he and his subcontractors worked while carrying out a charitable program for NYSDOH, and by claiming monies for cost of living adjustments ("COLA") to which he was not entitled. (PSR ¶¶ 9, 29, 30, 33). Junkovic carried out his crime principally by splitting the number of hours worked that he claimed each month, for both himself and his employees, across numerous separate contracts with the State, and billing separately for each contract, so that for each contract it appeared that he was billing for a reasonable number of hours. (PSR ¶ 20). When grouped together by billing period, however, as discovered by an audit performed by the New York State Comptroller's Office, Junkovic – through his charity, CSN – was massively inflating the number of hours he purportedly worked. (PSR ¶ 21).

For example, for the month of March 2010, CSN billed NYSDOH for a total of 768.90 hours worked by Junkovic, spread out over 10 separate contracts, which amounts to an average of more than 24 hours a day, each day of the month, including weekends. (PSR ¶¶ 21, 22). Yet during that month, travel and credit card records show that Junkovic in fact was in New Orleans, Louisiana, for five days that month, where he made numerous transactions at a casino, and on six of the remaining days of the month, Junkovic made transactions at a casino in Yonkers, New York. (PSR ¶ 22). Thus, Junkovic spent fully a third of the month gambling and

in New Orleans, all the while billing the State as though he was working more than 24 hours a day.

Moreover, as set forth in the PSR, Junkovic's March 2010 overbilling was not an aberration – in month after month during the time period of the scheme, Junkovic claimed on invoices that he had worked far, far more hours than he in fact did, including, as another egregious example, submitting invoices claiming a total of more than 590 hours worked in August 2010, even though he was traveling in Europe for nearly the entire month, from August 6, 2010 through August 30, 2010.  (PSR ¶ 23).

In addition to overbilling for his own time, Junkovic, through CSN, also claimed that his subcontractors worked far more hours than they actually had, in order to further pad CSN's invoices with the State, and Junkovic kept the difference for himself.  (PSR ¶¶ 29, 30).  For the audit period of April 1, 2010 through March 31, 2011, Junkovic claimed his subcontractors worked a total of 4,691 hours, when in fact the subcontractors had submitted invoices and been paid by Junkovic for only 2,606 hours, with Junkovic keeping the extra, unsupported State payments – nearly 50% of the total – for himself.  (PSR ¶¶ 29, 30).  Junkovic also claimed, over a two-year period from April 2010 through March 2012, more than $114,000 in COLA payments by certifying that the payments were intended to "promote the recruitment and retention of staff," when in fact, as Junkovic himself admitted when interviewed by the Comptroller's Office, he simply kept the COLA payments for himself.  (PSR ¶¶ 28, 29).

**Argument**

Junkovic's offense conduct was serious, brazen, and extended over a lengthy period of time.  Because Junkovic was a governmental contractor, entrusted with helping to carry out an important charitable and public health mission – cancer screening services for low-income

3

New Yorkers – his conduct was especially egregious.  It is precisely in cases such as this that general deterrence matters, so that government contractors entrusted with oversight of public monies understand that if they take advantage of their positions of responsibility, they will receive meaningful punishment.

Moreover, Junkovic, through his plea allocution, his input to the PSR, and in his sentencing submission, has tried to minimize his conduct, and has not shown the type of "sincere remorse" (Def. Submission at 10) that might warrant leniency.  In the PSR, at paragraph 18, defense counsel argues that some of the contracts Junkovic worked on over the years styled hours worked as "estimates," and others "listed flat fees, not hourly rates," and as a result, "Junkovic believed that payments under the contracts could be in the form of a salary or fee." (PSR ¶ 18).  To the extent any of that is relevant, it is an attempt by Junkovic to justify his criminal conduct, as though having some contracts in the past with fixed fees justifies several years of submitting false and inflated invoices – on contracts that plainly require payment based on actual hours worked – by grossly inflating the number of hours he and his subcontractors worked on invoice after invoice.

Defense counsel further claims in the PSR that Junkovic "had no intent to defraud the state with respect to COLA payments or with respect to payments to subcontractors."  (PSR ¶ 28).  That statement is hard to reconcile with the underlying facts – which defense counsel does not contest – and which show that Junkovic claimed $114,930 in COLA payments under false pretenses and another $45,626 in subcontractor time that the subcontractors did not invoice for and that Junkovic did not pay them for, instead keeping the money for himself.  Defense counsel's statement also cannot be reconciled with the defendant's claims of "sincere remorse"

4

in his sentencing submission. The defendant is making excuses, not taking full responsibility for his criminal conduct.

Finally, Junkovic's conduct was not, as he claims, an "aberration" (Def. Submission at 11). It went on for more than two years, and it involved repeated criminal conduct, month after month, as over and over again he submitted false and fraudulent invoices, containing purely fictional information about hours worked by himself and his subcontractors. Moreover, Junkovic did not report all or most of the income he received through his scheme – resulting in serious tax charges brought against Junkovic by the State of New York, which alleges that he owes the State back taxes of approximately $140,000. Because that matter is still pending, it does not affect Junkovic's criminal history score. Had the State charges been resolved prior to this case, Junkovic likely would have been in a different criminal history category with a higher Guidelines range. It simply defies credulity to suggest that such a lengthy period of criminal conduct, involving the repeated submission of false invoices, the expenditure of tens of thousands of dollars in illegally-obtained monies at casinos, and the failure to pay taxes on hundreds of thousands of dollars in income, can be chalked off as a mere "aberration."

## **CONCLUSION**

For the reasons set forth above, the Government respectfully submits that a Guidelines sentence is appropriate in this case to provide just punishment and adequate deterrence.

Dated: New York, New York
September 12, 2014

                                            Respectfully submitted,
                                            PREET BHARARA
                                            United States Attorney

                                     By:   /s/ Andrew D. Goldstein
                                            Andrew D. Goldstein
                                            Assistant United States Attorney
                                            Southern District of New York
                                            (212) 637-1559

## **CERTIFICATE OF SERVICE**

        I, Andrew D. Goldstein, Assistant United States Attorney for the Southern District of New York, hereby certify that on September 12, 2014, I caused a copy of the foregoing Sentencing Memorandum to be served by email and ECF upon the following:

Sarah Baumgartel, Esq.
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8772


Dated:        New York, New York
                September 12, 2014


        /s/ Andrew D. Goldstein
        Andrew D. Goldstein
        Assistant United States Attorney
        Southern District of New York
        (212) 637-1559